[No. 22851. Department One. March 26, 1931.]

NELLIE A. MADDOCK, *as Administratrix, Respondent*, v.
INTERNATIONAL MOTOR TRANSIT COMPANY OF
WASHINGTON *et al., Appellants.*[1]

*Kelly & MacMahon* and *Reynolds, Ballinger, Hutson
& Boldt,* for appellants.

*Wesley Lloyd,* for respondent.

MITCHELL, J.—Humphrey Joseph Maddock was
killed in an automobile accident on the evening of Sep-
tember 5, 1929, east of Tacoma on the Pacific High-
way. Claiming that his death was caused by the negli-
gent driving of a motor-propelled bus of the Interna-
tional Motor Transit Company of Washington, a cor-
poration, a common carrier of passengers, Nellie A.
Maddock, widow, as administratrix of her deceased
husband's estate, and on her own behalf and for the
use and benefit of their dependent children, brought
this action to recover damages against the transit com-
pany and the United Pacific Casualty Insurance Com-

[1]Reported in 297 Pac. 184.

pany, surety on the transit company's statutory bond. The verdict upon which judgment was entered was for the plaintiff, and the defendants have appealed.

The assignments of error are discussed together on behalf of the appellants, and present the question of the sufficiency of the evidence to take the case to the jury. In many material respects, there was a sharp conflict in the evidence, so that, after all, the question is, was there evidence and reasonable inferences from the evidence favorable to the respondent sufficient to sustain the verdict and judgment.

The accident occurred about dusk on a straight, level, paved portion of the highway running easterly and westerly, the pavement at that time being about eighteen feet wide. The deceased, accompanied by his son George, sixteen years of age, was driving a Chevrolet car at thirty to thirty-five miles an hour easterly along and on his right-hand side of the pavement, being followed immediately, at a distance of about seventeen feet, as an eye-witness testified, by appellant's bus, which, its driver testified, weighed about eight tons, and in good condition, and which, at that time and place, could have been readily stopped within thirty or forty feet. There were cars following the bus thirty to forty feet apart, as some witnesses testified, and at ordinary distances, as others testified.

On the northerly side of the pavement, a line of traffic was going westerly, and in it, from the rear, a rapid reckless driver named Sorge, in passing cars, drove out of, and back into, that line of traffic, and, upon his third attempt to do so, drove too far to his left, colliding with decedent's car, and almost instantly, according to respondent's theory and testimony supporting it, the bus ran into decedent's car, while appellants' proof was that the bus did not strike the decedent's car at all. Sorge's car, upon striking de-

cedent's car, glanced off in a curving direction to its right, and stopped several feet north of the pavement. The decedent's car was forced to its right against the highway fence, some three or four feet from the southerly edge of the pavement, and the bus, which, it seems, never left the pavement, stopped some fifty feet beyond the point at which decedent's car was struck. As a result of the accident, Mr. Maddock and Mr. Sorge each was thrown out of his car to the pavement and killed instantly, while the boy, George Maddock, was rendered unconscious.

The argument on behalf of the appellants is that a car following another car, to avoid a collision with the one ahead, must be driven anticipating only that the car ahead will be stopped in the ordinary way, upon ordinary occasions, and not by reason of a collision with a car from the opposite direction, as was the case here, and that, therefore, there was no negligence on the part of the bus driver in this case, although admitting that a distance of only seventeen feet between cars, the following car being such as this bus, is not sufficient, unless the car ahead stops gradually by the application of brakes. The further contention is made that, even if the driver of the bus was negligent, which appellants deny, it was not the proximate cause of the decedent's death; and they further contend that there is no evidence in this case that the bus struck decedent's car.

Appellant's proof tended to show that the decedent's car did not slacken its speed until suddenly stopped by the collision with Sorge's car, hence their argument that, if the bus did strike the decedent's car, which they deny, the close proximity of the bus to the decedent's car in running along the highway did not constitute negligence nor a proximate cause of the accident. On the contrary, George Maddock testified that

his father was driving from thirty to thirty-five miles an hour, that he saw the Sorge car coming and:

"Q. Now how far down this roadway was it you saw this other car. I am referring now to Mr. Sorge's car for identification. How far was it away when you saw it swing out, when your father put on the brakes? A. About two hundred feet, he began dodging in and out. Q. What was that, about, you say when he was about two hundred feet away? A. He was weaving in and out of the cars. He turned out about thirty-five feet from us and we put on the brakes and stopped. Q. How slow did your father bring his car? A. About ten miles an hour. Q. What did Mr. Sorge do? A. He evidently put on his brakes too. Q. Did your car and Mr. Sorge's car come together? A. Yes, they came together. Q. Was that much of a shock? A. It didn't throw us out of the seat. Q. Your father was still sitting in the seat after that collision? A. Yes, sir. Q. Did you see him? A. Yes, sir. Q. And then what happened? A. Almost at the same time something hit us in the back and that is all I can remember. Q. You don't remember anything after that? A. No, sir. Q. What was it that hit you in the back? A. Afterwards I learned what it was. Q. Did you know then? A. No, sir. Q. How long after the bump you had with Mr. Sorge's car was it you felt this thing hit you behind? A. Almost the same time. Q. You did not see your father alive any more? A. Right after the bus hit us from behind?"

In this testimony, it is evident that distances and rates of speed mentioned were estimates. This testimony on the part of the son was faithfully adhered to and several times repeated in his cross-examination.

After the accident, the decedent's body was lying about three feet in front of his car, from which fact it is argued that, necessarily, the decedent was thrown out of his car on account of the collision with the Sorge car, because of the rule, it is said, that where a car in motion is instantly stopped, one sitting in it will con-

tinue forward, while if a car which is still, or nearly so, is struck violently in the rear, a person sitting in the car will be thrown backward. There is no doubt of the correctness of the rule, but the conclusion involved in the argument ignores testimony and fair inferences from it in the case that the jury were at liberty to accept, which, under the very rule appellants invoke, might easily lead to a conclusion different from the one they assert.

In respondent's case in chief, a police officer, who went promptly to the scene of the accident, testified that decedent's car rested along-side the guard rail south of the pavement, with the rear of the car out a little more than the front, and that the hub of the front right wheel "had taken one or two posts." Then, upon indicating upon a map the relative positions of the car and the fence, the witness further testified:

"Q. Then you say the front wheel knocked out how many posts? A. As I remember, one post was leaning and chewed off. It was out of place anyway, and the plank was loose from that post. Q. The broken posts extended back from the Maddock car, is that right. Where were the broken posts with reference to Mr. Maddock's car? A. The closest one was broken off and I think this plank here was broken off. Q. Where was the Maddock car with reference to the guard rail? A. Right up against it, probably six or eight inches away from it. Q. Did you see any marks on the wheel of the Maddock car coinciding with the marks on the guard rail? A. Yes, sir."

The officer further testified that the right front wheel and the front spring of decedent's car were injured, and that the windshield glass was all gone. This testimony, as the jury was entitled to consider it, was at variance with appellants' contention that decedent's car was suddenly stopped by a head-on collision with the Sorge car. It authorized the reasonable inference

that the car was driven forward with considerable violence, striking one fence post, thence on with sufficient force to knock another fence post out of place and loosen the guard rail from it, thus causing decedent's automobile to suddenly stop at that point, which, as already stated, was only about three feet behind the position of the dead body.

There was other evidence corroborative of that already mentioned on behalf of the respondent introduced in rebuttal, which, though not to be considered in connection with the motion for a nonsuit made at the close of respondent's case in chief, was in the case with respect to appellant's motion for a directed verdict at the close of all the evidence, and also in disposing of the motion for a new trial. This evidence was given by a mechanic who dismantled the decedent's car after the accident. He testified that the car looked like it had been sideswiped, that from the edge of the left rear fender it was all smashed in, "all the way through the frame and all," that the blow went along the car until it got to the front door, and that the left rear wheel was damaged so that another one had to be put on it to tow the car in.

The testimony on behalf of respondent, already mentioned, answers appellants' contention that there was no evidence that the bus collided with decedent's car. It shows, in our opinion, that, altogether, the case was one to call for a decision by the jury, and not by the court, as to whether the driver of the bus was negligent at that time and place, and as to whether such negligence was a proximate cause of the death of decedent.

The record shows that the jury was fully and, indeed, rather elaborately instructed, and that no exception was taken to any instruction given or refused that has been preserved and presented as an assignment of

456

error which involves any matter different from those discussed.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.